### DANIEL CONNER vs. STATE OF MISSOURI.

1. An indictment on the 16th sect., art. 3—crimes and punishments, must specify the manner in which the entry into the dwelling house was made, so that the court may see that such an entry, by day or by night, was made in such manner as to constitute no other burglary, created by statute. To constitute burglary under this section, a breaking in the night time to get out of the house, must also be shown.

## APPEAL from St. Louis Criminal Court.

### STATEMENT OF THE CASE.

The defendant, on the 19th of January, 1850, was indicted for burglary in the second degree by breaking into the dwelling house of Henry Oberhellman, under sec. 16, art. 3 Crim. and Pun.

The defendant was arraigned and plead not guilty.

On the 6th day of February, 1850, defendant filed his motion to discharge under sec. 25, art. 6 of Prac. and Proc. in criminal cases; which motion was afterwards, on the 9th of February, 1850, overruled by the court.

On the 12th February, 1850, defendant filed his motion to quash the indictment:

1st. Because said indictment is endorsed burglary in the second degree, when in fact the same is for burglary in the third degree.

2nd. Because said indictment is in many other respects irregular, defective and uncertain; which motion was, on the 21st of February, 1850, overruled, and defendant went into trial; then the State proved that tne house in question was the dwelling house of Henry Oberhellman, that he had left it with his family some time before the burglary to avoid the cholera, with the intent of returning when the cholera should have abated—that he did return when the cholera abated and lived with his family in the same house—that defendant was seen, with another, going towards said house and afterwards seen in the house—that he broke out a window through which to make his escape– that he threatened to shoot those giving the alarm—that the kitchen window, which kitchen is adjoining to, and under the same roof with the dwelling house, was found raised—that the ketch or hasp of the door leading from the house to the kitchen was forced, so as to free the bolt from the hasp, and the door was open.

There was no one in the house but the defendant, and an accomplice at the time the defendant was in the house—that there was property in the house belonging to Henry Oberhellman—that the house was entered on Sunday about 3 or 4 o'clock at St. Louis county last summer.

Here the State closed, and the defendant offered in evidence a record and proceedings against

41

Daniel Conner in which said record he was charged with having burglariously entered the dwelling of Oberhellman, and showing that the State intended a *nolle prosequi* in said cause which was objected to by the State, and the court sustained the objection, and defendant excepted.

Defendant introduced some oral testimony, which it is deemed unnecessary to notice, and closed. Then asked the court to instruct the jury as follows:

1st. In order to convict the defendant on this indictment, the jury must be satisfied from the evidence that he did, in the day time, break and enter into the dwelling house of the said Henry Oberhellman, with the intent to commit some felony or larceny therein, by either one of the following methods: First, by forcibly bursting or breaking or bursting the wall or some other door or shutter of a window of said house, or the lock or bolt of such door, or the fastening of such window or shutter, or, secondly, by breaking through in any other manner, being armed with some dangerous weapon, or with the assistance and aid of one or more confederates, then actually present, aiding and assisting, or, thirdly, by unlocking an outer-door by means of false keys or by picking the lock thereof.

2nd. If the jury find the facts in this case to be that the defendant in the day time entered said house through an open outer-door or window, or other aperture not made by the defendant, and while in said house, and in the day time, broke open an inner-door thereof, and in the day time broke out of said house by breaking an outer-door or window of the same, such facts do not authorize a conviction on this indictment, although the jury may believe that the entering of said house by the defendant was for the purpose of committing a felony or larceny.

3rd. There is no evidence before the jury to authorize a conviction on this indictment, and the jury will therefore acquit.

Which instruction the court refused, and the defendant excepted.

The court then gave the following instructions:

1st. If the jury believe from the evidence that the defendant in the county of Saint Louis and within three years before the finding of the indictment, did break and enter in the day time by breaking an inner-door of the dwelling house of Henry Oberhellman, and that the defendant did so break and enter with the intent to commit a larceny, they will find the defendant guilty of burglary in the second degree, and assess the punishment by imprisonment in the penitentiary for a time not less than five nor more than ten years.

2nd. To convict the defendant of burglary it is not necessary that he should have actually or personally broke into the house in question, but he either broke in himself, or was in company with another, and the other broke into said house, and they both entered with the common intent and design to steal the property of Henry Oberhellman, this is burglary in both.

3rd. If Henry Oberhellman resided in the house in question when he was in St. Louis, but was temporarily absent with his family on account of the cholera or any other cause, and that he left said house with the intent to return to it, and dwell therein, and that the defendant by himself or in company with another broke and entered said house during such temporary absence of said Oberhellman, then said house was in law the dwelling house of said Henry Oberhellman, although no one lived in said house at the time of said breaking and entering.

4th. The jury having nothing to do with any former trial of this cause nor any right to discharge under any statute, the only question for the consideration of the jury in this cause, is, guilty or innocent of the crime mentioned in the indictment in this cause, and if guilty, to assess the amount of punishment.

5th. If you entertain a reasonable doubt of the guilt of the accused, you ought to acquit. To which instructions defendant excepted.

The jury found the defendant guilty, and assessed his punishment at five years imprisonment in the penitentiary.

On the 25th of February, 1850, defendant filed his motion for a new trial, for the following reasons:

1st. Because the verdict is against law.

2nd. Because it is against the evidence in the case.

3rd. Because the court erred in refusing instructions asked by defendant.

4th. Because the court erred in its instructions to the jury.

The court overruled this motion and defendant excepted.

On the same day defendant filed his motion in arrest of judgment, for the following reasons:

1st. Because the indictment is so insufficient, defective and uncertain that no legal judgment can be given thereon.

2nd. Because all the proceedings against the defendant are irregular, null and void. This motion was also overruled by the court, to which defendant excepted, and brings the cause here by appeal.

SIMMONS & BROWN, for plaintiff in error.

I. The general uncertainty of the instructions is such that the defendant cannot tell with what degree of burglary he is charged, or upon what law the indictment is founded. Upon which point reference is made to Starkie, 8 Mo. R., 405. The averments are so general as to time, place and manner that the party could not know how to defend himself. Damerson vs. State, 8 Mo. R., 405.

II. That an indictment for burglary, which charges breaking, must specify the manner and the circumstances of so doing, otherwise there would be no force in the exemption provided by sec. 22 Crim. & Pun., p. 357, statute,

III. That the different manners of breaking, constitute by the statute law, the different degrees of the offence of burglary; and, that consequently where no manner is specified, no degree is, nor can be charged.

IV. That the sections which make the breaking into a house in the day time a burglary, are sec. 14, in which the manner must be alleged to be one of the three kinds specified in sec. 13; sec. 16, which requires that there should be also a breaking out in the night time; sec. 21, which makes the offence there embrace burglary in the third degree, which is not the verdict found in this case. The indictment does not answer to either of these sections and should therefore have been quashed.

V. That in offences by burglary, the method and time are essential qualities; and when either is omitted, the indictment is voidable.

The defendant also complains, that the court erred in overruling the motion in arrest of judgment, for the following reasons:

1st. The State informed the defendant, and urged upon the court, and still contends that the indictment is based upon the 16th sec. of the statute relative to Crims. & Pun., (to which section particular attention is prayed) but this section merely provides that "where one enters in the day time and breaks out at night," he shall be guilty of burglary in the second degree.

The State contends, and the court below so decided, that the latter clause of sec. 16, relative to breaking out in the night time does not apply to the first clause of the same section, which speaks of "every person who shall enter into the dwelling house of another by day or night," but merely one "being in the dwelling house of another;" in other words, that "every person who shall enter into the dwelling house of another by day or night, in such a manner as not to constitute any burglary as hereinbefore specified, with intent to commit a felony or other larceny," is guilty of burglary in the second degree. This construction certainly will not bar examination, as the offence of burglary would not then differ in the least from the offence of larceny.

The defendant on the other hand contends, that the clause referring to breaking out in the night time refers to both the alternatives, and that this being the case the indictment cannot rest upon this section, and therefore the motion in arrest of judgment should have been sustained.

2nd. That the evidence does not show that any offence has been committed which is cognizable by law. The evidence, taken in its utmost latitude only proves an entrance into an occupied house through an open window, and the breaking of an inside door, all of which occurred in the day time.

It is concluded that this state of facts does not fall within any offence or crime that is pointed out in our statute. It is not a burglary in the 2nd degree as found by the jury, because the facts do not come up to the requirements of any section constituting and explaining the offence of burglary in the 2nd degree.

It is not a burglary in the 2nd degree, because there is neither a breaking of an outside door nor window, nor an entrance in the day time and breaking out in the night time.

3rd. The question is also submitted whether an unoccupied house, that has been deserted on account of cholera, is a dwelling house within the meaning of the law.

The defendant also complains that the court erred in overruling the instructions asked by defendant, and in granting the instructions asked by the State. All of which is submitted, &c.


**LACKLAND, for the State.**

The court did not err in overruling the motion to discharge under § 25, art. 6, Prac. and Proc. in Crim. Cases. Because the end of the second term after indictment found had not arrived. The indictment was found 19th July, 1850, and the motion to discharge overruled on February 6, 1850, being the same term.

It was contended below upon the argument of this motion, that as the defendant was indicted on the 13th August, 1849, for breaking and entering the house of one Abner Holman with intent to steal his property therein, and was detained in custody until the 17th December, 1849, when, upon the trial it appeared that there was a variance between the indictment and proof, showing the name to be Henry Oberhellmann's. A *nolle prosequi* was entered, and that period must be taken into the account, and thereby make a sufficient length of time to entitle the defendant to his discharge.

The argument, we take it, is fallacious for various reasons. We notice only one, which must show it is bad.

It goes upon the grounds that the offence described in the indictment found 13th August, 1849, in which defendant is charged with entering the house of Ober Helman, and that described in the indictment found 19th January, 1850, in which defendant is charged with having broken and entered the house of Henry Oberhellman, are one and the same offence. In other words, the argument is that Henry Oberhellman and Ober Helman are one and the same name.

I suppose no one would pretend to say that an indictment charging a defendant with entering the house of Ober Helman would be sustained by proof that he entered a house of Henry Oberhellman. The authorities tell us that if you have not the letters, but if the name mentioned in the indictment corresponds in sound with the name proven, it is sufficient. These names are entirely different in construction and sound, and this seems to me to settle the question that the *offences* are distinct.

The court did not err in overruling the motion to quash the indictment. The first name mentioned in said motion did not exist. The indictment charged burglary in 2nd degree, and was so endorsed. What if it were endorsed as alleged in said motion? How can that vitiate the allegations in the indictment?

Conner vs. State of Missouri.

We can discover no fault in the indictment, and have nothing to say as to the 2nd reason in said motion.

The court did not err in rejecting the record offered by the defendant for divers reasons. 1st. Because it did not show that there had been any judgment rendered therein, either for or against the defendant. 2nd. Because it was, as we have endeavored to show, not the same offence. 3rd. Because the record was not admissible upon the plea of not guilty. If the record had shown a former conviction or acquittal of the same offence, this must be set forth by a special plea in bar.

The court did not err in refusing the defendant's first instruction; because it describes a burglary committed in the *manner* and under the *circumstances* as prescribed and provided for in the 13 and 14 § of 3 art. of Crim. and Pun., and proceeds upon the grounds that there is no other burglary of the 2nd degree than that mentioned in this instruction and within the allegations of the indictment.

The court did not err in refusing the 2nd instruction asked for by the defendant; because it has nothing to do with the case. I suppose it was based upon the latter clause of 16th §, which makes the being in a dwelling house, and committing a felony or larceny, and breaking out in the night time in certain particular ways, burglary in the 2nd degree. The instruction is entirely abstract. There was no charge against defendant of larceny, which is an ingredient of that kind of burglary. We charge him simply with the intent, nor was there any larceny attempted to be proven.

The court did not err in refusing the 3rd instruction asked for by defendant; because it states as matter of fact which is not true.

I can see no error in first instruction given, unless it be in the restriction of the breaking to the *day time*.

This is well enough and suits the evidence in the cause, but the statute says either *night or day*. The defendant is not injured by this error, if error it be.

The court did not err in giving the second instruction given. In support of it, see Rascal Crim. Ev. p. 346; 1 Hale, P. C. 439, 534; 3 Inst. 632 East. P. C. 486; 7 C. & P. 432.

The court did not err in giving the third instruction for the State. See Rascal Cr. Ev. 3rd American from 2nd London Ed. top p. 350, side 351; Wheaton's Crim. Law, p. 361; 1 Hawk P. C. C. 37, § 11; Cern vs. Brown, 3 Rawle, 207.

All the questions raised by the motion in arrest, we think have been disposed of.


RYLAND, J., delivered the opinion of the court.

From the above statement it will be seen that Daniel Conner was indicted in the criminal court of St. Louis county. The indictment was returned into court on the 19th of January, 1850, by the grand jury, and is in the following words, (viz:)

State of Missouri,     } SS.
St. Louis county,    }

St. Louis Criminal Court,
January Term, 1850.

The grand jurors of the State of Missouri, within and for the body of the county of Saint Louis, now here in court duly empannelled, sworn and charged, upon their oath present, that Daniel Connor, otherwise called Daniel Conner, late of Saint Louis, in St. Louis county aforesaid, on the first day of January, in the year of our Lord one

thousand eight hundred and fifty, at Saint Louis, in Saint Louis county aforesaid, with force and arms, the dwelling house of Henry Oberhellmann, then and there situate, feloniously and burglarily did break into and enter with the intent, the goods, chattels and property of the said Henry Oberhellmann, in the said dwelling house then and there being, then and feloniously and burglariously, to steal, take and carry away, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State."

On this indictment, the defendant was arrested. He appeared in court, and moved the court to discharge him; because he had not been brought to trial within the two succeeding terms of the court, after indictment found against him, for the offence. This motion was made on the 6th of February, and during the same term of the court in which the indictment was found. From this statement it would seem that there was not the slightest foundation for such a motion. But I find from an examination of the record, as well as from the above statement made by the circuit attorney of the facts in this case, that Daniel Connor was indicted at July, 1849, of the Saint Louis criminal court, for feloniously and burglariously breaking into and entering the dwelling house of one Ober Hellman, in Saint Louis county, on the first day of August, 1849, with intent feloniously and burglariously to steal, take and carry away the goods, chattels and property of said Ober Hellman.

It appears from the record, that this cause was continued on the 30th August, being the end of the July term, for "want of time to try the same." On the 30th of October, the end of the September term of the court, this cause was again continued for "want of time to try the same." On the 17th of December, during the November term of the said court, the circuit attorney, by leave of the court, entered a *nolle prosequi*" on this indictment found at the July term aforesaid. It was upon this state of facts, that the above motion to discharge the defendant was made by his counsel. Take this motion in any point of view, and there is nothing in it worthy the consideration of the court below. The indictment now before us, charges the prisoner with breaking and entering into the dwelling house of Henry Oberhellman—not the same offence as that charged in the first indictment. The dwelling house in that is charged as belonging to Ober Hellman. In the first indictment, Ober is the christian name and *Hellman* the sir-name. In this indictment, Henry is the christian and Oberhellman the sir-name. The criminal court acted properly, therefore, in overruling this motion. It could not lawfully have done otherwise.

The record of the first indictment, too, shews that the cause was continued at July term and at September term in the year 1849, "for want of time to try it." This is expressly within the provision of the very section of the statute which directs the discharge of the prisoner, unless tried before the end of the second term which shall be held after indictment found. There is nothing therefore in this point.

I will now take up the main question in this case—the sufficiency of the indictment. This will determine this case before us without noticing the instructions. This indictment is based on our statute, and for the better understanding of which it will be necessary to copy the several sections of our criminal code in regard to the subject of burglary. There is no pretence that this indictment is good at common law. It does not even look to the common law for support. It is upon our statute alone that the State relies to support this indictment. The circuit attorney relies upon the 16th section of the third article of our criminal code.

This is a question of grave import, and it has received mature consideration. The following are the sections of our statute on this subject:

Sec. 13. Article 3rd, crimes and punishments; digest 1845, page 356. "Every person who shall, be, convicted of breaking into and entering in the night time, the dwelling house of another, in which there shall be at the time some human being, with the intent to commit some felony, or any other larceny therein, either, first, by forcibly bursting or breaking the wall or any outer door, window, or shutter of a window of such a house, or the lock or bolt of such a door, or the fastening of such window or shutter; or, second, by breaking in any other, manner, being armed with some dangerous weapon, or with the assistance and aid of one or more confederates then actually present aiding and assisting; or, third, by unlocking an outer door by means of false keys, or by picking the locks thereof, shall be adjudged guilty of burglary in the first degree.

Sec. 14. "Every person who shall be convicted of breaking into a dwelling house in the day time, under such circumstances as would have constituted the crimes of burglary in the first degree, if admitted in the night time, shall be guilty of burglary in the second degree.

Sec. 15. "Every person who shall be convicted of breaking into a dwelling house in the night time, with the intent to commit a felony or any larceny, but under such circumstances as shall not constitute the offence of burglary in the first degree, shall be deemed guilty of burglary in the second degree.

Sec. 16. " Every person who shall enter into the dwelling house of another, by day or night in such manner as not to constitute any burglary as herein before specified, with intent to commit a felony or any larceny, or being in the dwelling house of another, shall commit a felony or any larceny, and shall in the night time break any outer door, window, shutter of a window, or any other part of said house to get out of the same shall be adjudged guilty of burglary in the second degree.

Sec. 17. " Every person who having entered the dwelling house of another in the night time through an open outer door, or window, or other aperture not made by such person, shall break an inner door of the same house with intent to commit any felony or larceny, shall be adjudged guilty of burglary in the second degree.

Sec. 18. " Every person who being admitted into any dwelling house with the consent of the occupant thereof, or being lawfully in such house, shall in the night time break an inner door with intent to commit a felony or larceny, shall be adjudged guilty of burglary in the second degree.

Sec. 19. "No building shall be deemed a dwelling house, or any part of a dwelling house, within the meaning of the foregoing provisions, unless the same be joined to, immediately connected with, and a part of, a dwelling house.

Sec. 20. " Every person who shall be convicted of breaking and entering in the night time, first, any building within the curtailage of a dwelling house, but not forming a part thereof: or, second, any shop, store, booth, tent, warehouse or other building, or any boat or vessel, in which there shall be at the time some human being, or any goods, wares or merchandize or other valuable thing kept or deposited, with intent to steal or commit any felony therein, shall on conviction, be adjudged guilty of burglary in the second degree.

Sec. 21. " Every person who shall be convicted of breaking and entering, in the day time, any dwelling house or other building, or any shop, store, booth, tent, boat or vessel; under such circumstances as would have constituted the offence of burglary in the second degree, if committed in the night time, shall be deemed guilty of burglary in the third degree.

Sec. 22. " The breaking out of any dwelling house, or the breaking of the inner door thereof, by any person being therein, shall not be deemed such breaking a dwelling house here as to constitute burglary in any case, other than such, as are herein specified particularly."

These are all the sections of our criminal code, in relation to bur-

glary, and unless the indictment in this case can be supported by one of these sections, it must fall. It is most obvious that the circuit attorney did not intend that the indictment should be considered as framed under the provisions of the 13th section, the first one above quoted. That section alludes to acts done in the night time, breaking and entering into a dwelling house, in the night time; in which dwelling house there shall at the time be some human being.

The indictment in this case is not framed under the provisions of the 14th section. This section requires the circumstances under which the act was committed to be stated, so that the court may see, whether the act which is charged to have been committed in the day time, would under the circumstances constitute the crime of burglary in the first degree, if it had been committed in the night time, instead of the day time.

There is nothing in the 15th section to support this indictment. This section has reference to and embraces breaking into a dwelling house in the night time only.

The 17th section also embraces acts done in the night time; breaking an inner door, after having entered the house in the night time through an open outer door, window, &c.

The 18th section embraces acts done in the night time, by a person who was admitted into the dwelling house with the consent of the occupant, or by a person being lawfully in the dwelling house.

The 19th section declares what building shall be deemed a dwelling house or part of a dwelling house under the provisions of this act.

The 20th section embraces acts done by a person in the night time, breaking into a building within the curtilage, but not forming a part of a dwelling house, or breaking into a shop, store, &c., boat or vessel in which there shall be at the time some human being, or some goods, &c., with the intent to steal or commit any felony therein, &c.

The 21st section embraces acts done by a person in the day time, by breaking and entering any dwelling house or other building or any shop, boat or vessel, &c., under such circumstances as would have constituted the offence of burglary in the second degree if done in the night time, and declares such to be burglary in the third degree. It is necessary in an indictment under this section to set forth the circumstances particularly, so that the court may see, that such acts under such circumstances if committed in the night time, would constitute the offence of burglary in the second degree.

The 22nd section defines the breaking out of any dwelling house or the breaking the inner door thereof, and limits such acts to the particu-

lar offences under the provisions specified in these sections. Now, not one of these various sections here particularly noted, will support the indictment in this case ; and if there be no other sections it must fall.

The 16th section alone remains, and upon that, the circuit attorney relies for the maintenance of his indictment in this case.

This 16th section is in substance the same as the act of 12th Ann chap. 7, section 3. Which is as follows : "And whereas, there has been some doubt whether the entering into the mansion house of another, without breaking the same, with intent to commit some felony, and breaking the said house in the night time to get out be burglary, be it declared and enacted that if any person shall enter into the mansion or dwelling house of another by day or night without breaking the same, with intent to commit felony, or being in such house, shall commit any felony and shall in the night time break the said house to get out of the same, such person is and shall be adjudged and taken to be guilty of burglary and shall be ousted of the benefit of his or her clergy in the same manner as if such person had broke and entered the said house in the night time, with intent to commit felony there."

The 7th and 8th George 4th, section 11th, is as follows : " If any person shall enter the dwelling house of another, with intent to commit felony or being in such dwelling house shall commit any felony; and shall in either case break out of the said dwelling house in the night time, such person shall be deemed guilty of burglary.

There are two objections to this indictment. Under the 16th section it must, in my opinion, specify the manner in which the entry into the dwelling house was made so that the court might see, that such entry either by day or by night, was made in such manner as not to constitute any burglary herein before specified—that is, as specified in the 13th, 14th, and 15th sections above quoted.

The second objection is the failure to aver that the defendant did break out of the said dwelling house in the night time. I have no doubt, that the last clause of said 16th section, beginning with the words "and shall, in the night time break any outer door, window, &c.," must be added to the two first clauses of the same section, in order to complete the offence; that is, that the offence consists in the entry of the house either by day or night with the intent to commit a felony or larceny and shall in the night time break any outer door, &c., or being in the house shall commit any felony or larceny and shall in the night time break any outer door, &c. There must be a breaking in the night time to get out of the house to make or constitute burglary under this 16th section.

There is but very little variance between this 16th section in our

digest of 1835, and the 16th section in the digest of 1845. The phraseology of the two is nearly identical, the difference consists in the words with the intent to commit "a crime" instead of "a felony or larceny." The digest of 1835, that is the criminal code was the work of some of our best and most distinguished lawyers. I have no doubt that the 12th Ann., chap. 7th, section 3rd and the 7th and 8th, Geo. 4, section 11th, above quoted by me, were in the minds of the learned lawyers who principally prepared this code of criminal law in 1835. The difference in the opinion of Lord Bacon and Sir Matthew Hale, which gave rise to the 12th Ann. chap. 7th, section 3rd, was well known to the lawyers who reported our criminal code of 1835; and I consider the construction which I have given to the 16th section of our present act quoted above is the proper and legitimate one. The one designed by the legislature. They never would have made such disparity in the punishment of grand larceny and burglary in the second degree if the merely entering a dwelling house in day time with intent to commit a felony or any larceny, and going out of it again immediately without doing any other act shall be considered burglary in the second degree. Even the British parliament in the reign of Ann required more than our legislature did, in order to make a person guilty of burglary in the second degree.

The British parliament say that there has been some doubt whether entering into the mansion of another without breaking the same, with intent to commit some felony, and breaking the said house in the night time to get out, be burglary ; therefore, they pass the statute of Ann, declaring it burglary. Our legislature copies this statute, and makes even a part or half of the transaction which the British Parliament said there was a doubt about being burglary; burglary with us in the second degree, if we are to give the interpretation or construction to this 16th section, which is contended for by the State in this case! I cannot agree to any such construction. This question arose before me once while on the circuit bench, it was then settled agreeable to my opinion here given. I have more thoroughly investigated this subject, and my opinion has been strengthened, and I am happy in having the concurrence of Judge Napton in this construction of our statute.

The defendant was found guilty on this indictment, he moved for a new trial, also in arrest of judgment, both motions were overruled. The motion in arrest brought the sufficiency of the indictment before the court. This last motion should have been decided otherwise.

This view of the law governing this case, renders it unnecessary for

this court to notice the evidence or the several objections arising on the instructions given as well as those refused by the court below.

The indictment being substantially defective, being drawn under a wrong construction of the 16th section, of article 3rd, of our criminal code, will not warrant the conviction and punishment of the appellant, Daniel Conner.

The judgment of the criminal court is therefore reversed.